IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**LORALYN LYNN REHNBLOM,**

      Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,

      Defendant.

**No. 13-CV-3012-DEO**

**ORDER**

_____

This matter is before the Court pursuant to Loralyn Rehnblom's [hereinafter Ms. Rehnblom] application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 et seq. The parties appeared for a hearing on November 14, 2013. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

## I. FACTUAL BACKGROUND

Ms. Rehnblom was born November 7, 1968, and was 41 years old at the time the application was filed. She has a limited education; she took special education classes throughout her life, and she only finished the ninth grade. She is divorced

with four children.  She and two of her children live with her
mother in the Webster City, Iowa, area.

Ms. Rehnblom claims disability based upon a number of
mental and emotional issues, including depression, anxiety,
and limited mental functioning.

## II.  PROCEDURAL HISTORY

Ms. Rehnblom filed her application for supplemental
security income ("SSI") benefits under Title XVI of the Social
Security Act ("Act"), 42 U.S.C. §§ 1381 et seq. on January 5,
2010.  Her claim was denied initially on June 3, 2010, and
upon reconsideration on July 30, 2010.  On October 17, 2011,
Ms. Rehnblom appeared in Fort Dodge for a video hearing before
Administrative Law Judge (ALJ) John Sandbothe.  On December
13, 2011, the ALJ denied Ms. Rehnblom's claim.  Ms. Rehnblom
appealed her claim to the Appeals Council, who denied it on
February 12, 2013.  Ms. Rehnblom then filed the present
Complaint on March 6, 2013.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is
> disabled under section 1614(a)(3)(A) of the
> Social Security Act.  Disability is defined
> as the inability to engage in any
> substantial gainful activity by reason of
> any medically determinable physical or

> mental impairment or combination of
> impairments that can be expected to result
> in death or that has lasted or can be
> expected to last for a continuous period of
> not less than 12 months. Although
> supplemental security income is not payable
> prior to the month following the month in
> which the application was filed (20 CFR
> 416.335), the undersigned has considered
> the complete medical history consistent
> with 20 CFR 416.912(d).

Docket No. 9, Tr. 14.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5)

determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147

(8th Cir. 1982)(en banc) *abrogated on other grounds* by <u>Higgins</u> <u>v. Apfel</u>, 222 F.3d 504, 505 (8th Cir. 2000)). When determining the RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of

the S.S.A.. <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Rehnblom had not engaged in substantial gainful activity since January 5, 2010. The ALJ found that she had several severe impairments: depression, anxiety, and borderline intellectual functioning. The ALJ also noted other impairments he found non-severe, including: migraine headaches and asthma. However, the ALJ found that Ms. Rehnblom does not have an impairment or combination of impairments that meet or exceed a listed impairment. Specifically, the ALJ stated:

> [t]he record does not contain medical findings obtained on clinical examination or special study, which are the same as or equal to any of those listed in any subsection of the Listing of Impairments. The undersigned has reviewed all of the evidence and concludes that the claimant's severe impairments do not meet or equal the severity of any listing.

Docket No. 9, Tr. 17. The ALJ considered Ms. Rehnblom's mental impairments using the "paragraph B" criteria and the "paragraph C" criteria as set out in 20 CFR Part 404, Subpart

P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926) and determined that Ms. Rehnblom's mental impairment did not meet either set of requirements.

The ALJ went on to consider residual functional capacity and concluded:

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform work involving only simple, routine, repetitive tasks, at no more than a regular pace, and requiring no contact with the public.

Docket No. 9 Tr. 19.

The ALJ than considered the plaintiff's credibility under the Polaski standard and stated:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Docket No. 9, Tr. 20. Regarding credibility, the ALJ went onto say:

> [i]n terms of the claimant's credibility, the medical record reveals the claimant has a long history of medication noncompliance (Exhibits 14F/1-3; 26F/8), missed appointments (Exhibits 21F; 26F), and ignoring medical advice (Exhibit lOF/3). The record also reveals extensive documentation of drug-seeking behaviors by the claimant, for many years (Exhibits llF/13, 19, 26; 14F/2, 5, 43, 52). The claimant has visited the emergency room frequently to request shots for her headaches, but was eventually denied by the emergency room unless she had a note from her primary care physician prescribing this type of treatment (Exhibit 6F/1). During hospitalizations for chest pain, the claimant was noted to request more morphine for her pain, and ultimately discharged herself against medical advice when she was informed she would receive no more morphine (Exhibit lOF/2). During another hospitalization, the record shows the claimant visited the nurses' station every five minutes asking for morphine, after she was denied this medication (Exhibit 14F/53). The record also reveals the claimant visiting numerous hospitals seeking medications (Exhibits lOP; llF; 12F; 14F/2). The undersigned finds these facts weigh heavily against the claimant's credibility.

Docket No. 9, Tr. 21.

Further, the ALJ emphasized the fact that Ms. Rehnblom could live independently and perform functions of daily living. Docket No. 9, Tr. 20. The ALJ also emphasized the fact that Ms. Rehnblom only sought 'sporadic' treatment. Docket No. 9, Tr. 21. The ALJ then discussed the fact that Ms. Rehnblom has a limited work history, concluding that she has a "poor work record." Docket No. 9, Tr. 21.

Looking at the opinion evidence, the ALJ gave little weight to the statements of Dr. S. Lee, Ms. Rehnblom's treating physician. Similarly, the ALJ gave little weight to independent examiner Dr. Joseph Brunkhorst. Both Dr. Lee and Dr. Brunkhorst opined that Ms. Rehnblom would be unable to maintain employment. The ALJ gave some weight to Dr. Dee Wright, a state examiner, and Dr. William Morton, an independent examiner, both of whom opined that Ms. Rehnblom had no severe mental limitation. The ALJ gave great weight to Dr. Jan Hunter, a state examiner, who stated Ms. Rehnblom did not have a severe physical impairment.

Based on his RFC, the ALJ concluded that:

> [c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

>national economy that the claimant can
>perform (20 CFR 416.969 and 416.969(a)).

Docket No. 9, Tr. 23.

## III.   STANDARD OF REVIEW

This Court's role in review of the ALJ's decision
requires a determination of whether the decision of the ALJ is
supported by substantial evidence on the record as a whole.
See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935
(8th Cir. 2008).   Substantial evidence is less than a
preponderance but enough that a reasonable mind might find it
adequate to support the conclusion in question. <u>Juszczyk v.
Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v.
Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)).   This Court must
consider both evidence that supports and detracts from the
ALJ's decision. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th
Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th
Cir. 1996)).   In applying this standard, this Court will not
reverse the ALJ, even if it would have reached a contrary
decision, as long as substantial evidence on the record as a
whole supports the ALJ's decision. <u>Eichelberger v. Barnhart</u>,
390 F.3d 584, 589 (8th Cir. 2004).   The ALJ's decision shall
be reversed only if it is outside the reasonable "zone of

choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV. ISSUES

In her brief, Ms. Rehnblom argues several issues. First, Ms. Rehnblom argues the Appeals Council failed to consider additional evidence she submitted. Next, she argues that the ALJ's finding is not supported by substantial evidence, which is an attack on the ALJ's medical evidence and credibility determination in relation to the RFC. Finally, Ms. Rehnblom argues the hypothetical the ALJ relied upon was incomplete.

## V. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The

Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

## A. New Evidence

The first issue the Court will consider is the Plaintiff's argument regarding new evidence. As was discussed above, the ALJ determined that Ms. Rehnblom's depression was not severe. Among other things, the ALJ cited the fact that Ms. Rehnblom's treatment was "sporadic." Following, the ALJ's decision, Ms. Rehnblom appealed her case to the Appeals Council. Ms. Rehnblom also submitted additional evidence from Dr. Lee about her case to the Appeals Council. See Docket No. 9, Tr. 779-808. The Plaintiff argues that it was an error for the Appeals Council to fail to consider the new evidence. As this Court has previously stated, the Appeals Council must consider additional evidence if it is new, material, and relates to a time period before the ALJ's decision. 20 C.F.R. § 404.970(b); see <u>Johnson v. Chater</u>, 87 F.3d 1015, 1018 (8th

Cir. 1996). SSA's Hearings and Appeals Law and Litigation

Manual (HALLEX) Section I-4-2-30 provides:

> [t]he claimant or another SSA component may
> submit additional materials to the [Appeals
> Council] at any time. The materials may or
> may not be part of a subsequent claim that
> has been adjudicated. If the claimant
> files a subsequent application after
> commencing a civil action on a prior claim,
> the adjudicating component . . . will limit
> its consideration to the period, if any,
> following the period undergoing judicial
> review. . . . If the adjudicating
> component makes a favorable determination
> or decision on the subsequent application,
> it will request the effectuating component
> to forward the case to [the Office of
> Appellate Operations] after effectuation to
> determine the impact, if any, of the
> favorable determination or decision on the
> pending court case.

HALLEX, available at:

 http://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-30.html (last
visited March 24, 2014).

When the Plaintiff appealed the ALJ's ruling, she

included additional evidence from Dr. Lee, including Dr.

Lee's treatment notes from appointments where she requested

additional medicine for her severe emotional issues. The

Appeals Council concluded, without explanation, that "this

information does not provide a basis for changing the [ALJ's]

decision." Docket No. 9, Tr. 2.[1] This was an error. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence submitted that relates to the period before the date of the ALJ's decision. <u>Lamp v. Astrue</u>, 531 F.3d 629, 632 (8th Cir. 2008); <u>Cunningham v. Apfel</u>, 222 F.3d 496, 500 (8th Cir. 2000); see 20 C.F.R.§ 404.970(b). The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. See <u>Nelson v. Sullivan</u>, 966 F.2d 363, 366 (8th Cir. 1992). There is a distinction between acknowledging new evidence, and considering it. In this case, the Appeals Council acknowledged the evidence, but failed to consider it in light of the entire record. This was an error. As will be discussed in greater detail below, the new evidence was relevant in that it was both from a treating source and it bolstered Ms. Rehnblom's credibility. In his decision to

---

[1] The Defendant acknowledges Ms. Rehnblom's new evidence, but argues that some of the mental health treatment occurred after the ALJ's decision, so under the rules, it should not be considered as part of the record. Docket No. 14, p. 12-13. The Court acknowledges that the relevant time period is prior to December 13, 2011.

deny Ms. Rehnblom benefits, the ALJ gave little weight to Dr. Lee's assessments and seized upon Ms. Rehnblom's "sporadic" treatment.  Because the weight of Dr. Lee's opinion and Ms. Rehnblom's "sporadic" treatment were issues central to the ALJ's ruling, the Appeals Council's decision to not actually "consider" the new evidence was especially egregious.

**B. Credibility**

The next argument the Court will address is about the Plaintiff's credibility and the ALJ's credibility determination.  In making his RFC finding, the ALJ determined that Ms. Rehnblom was not credible in her testimony.

The standard regarding credibility findings is well settled.  "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ may not discount subjective complaints solely because they are

not supported by objective medical evidence.  An ALJ must have sufficient justification for doubting a claimant's credibility.  See <u>Wildman v. Astrue</u>, 596 F.3d 959, 968 (8th Cir. 2010) (quoting <u>Schultz v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007)).  However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the plaintiff's complaints if they are inconsistent with the record as a whole.  Ms. Rehnblom testified that she suffers from severe depression.  Docket No. 9, Tr. 34.  She states that she was abused sexually as a child, and since has had problems interacting with others.  Docket No. 9, Tr. 34-35. She has crying spells two or three times a day.  Docket No. 9, Tr. 35.  She cannot keep or balance a checkbook.  <u>Id.</u> Elsewhere in the record, Ms. Rehnblom made it clear that she is unable to function for more than a few hours at a time, much less for a full work day.  See Docket No. 9, Tr. 169-181.

The Defendant contends that:

> [t]he ALJ properly considered the credibility of plaintiff's subjective allegations, and found these allegations were only credible to the extent that they supported the limitations enumerated in the RFC (Tr. 20). The ALJ articulated the inconsistencies on which he relied, including: inconsistencies between the objective medical evidence and plaintiff's subjective allegations; plaintiff's sporadic treatment and regularly missed appointments; her noncompliance with prescribed medication; and her poor work history (Tr. 20-22).

Docket No. 14, p. 11.

As was noted above, the ALJ seized on the fact that Ms. Rehnblom's treatment history has been "sporadic." As has been repeatedly stated, "[t]o a poor person, medicine that he cannot afford to buy does not exist." Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). In Tome v. Schweiker, the Eighth Circuit Court of Appeals reversed the district court's finding of no disability because the claimant "did not consciously decide not to follow 'doctor's orders,' but rather lacked the financial resources and the discipline and education needed to understand and follow her [medical regime]." 724 F.2d 711, 713-14 (8th Cir. 1984); see also Agan v. Astrue, 922 F. Supp. 2d 730, 753 (N.D. Iowa 2013).

Ms. Rehnblom testified that she lost her medical insurance, which is one reason that she was unable to treat her issues as often as they probably needed. Docket No. 9, Tr. 34. She also has had to stop her medications because she could not afford them. Docket No. 9, Tr. 36; see also Docket No. 9, Tr. 282, explaining Ms. Rehnblom's financial situation and its affect on her ability to treat her mental/emotional issues. Additionally, Ms. Rehnblom testified that Dr. Lee would help her with everyday tasks, such as filling out forms for food stamps and other social services. Docket No. 9, Tr. 34. (Accordingly, once Ms. Rehnblom could not go to the doctor, the doctor who otherwise helped her get services, was no longer available to help her get services.) Finally, Ms. Rehnblom testified that she cannot drive and that her ex-husband drives her to appointments. Docket No. 9, Tr. 37. As such, she is dependant on others to get to medical appointments.

There is no serious argument in this record that Ms. Rehnblom has the means to get consistent medical services. Ms. Rehnblom is poor, lives with her mother (who also seems to support Ms. Rehnblom's disabled sibling), and has to take

care of her children. Ms. Rehnblom's relationships are often not beneficial and negatively impact her financial situation. She has to rely on others to even get to the doctor. However, all that said, it is clear from the record that Ms. Rehnblom actually treats in a fairly consistent manner when she has the means to do so. See, for example, medical records at Docket No. 9, Tr. 497-611. This conclusion is bolstered by the additional evidence the Appeals Council failed to consider, which shows that in late 2011, Ms. Rehnblom aggressively treated for mental and emotional issues. (See for example, Dr. Lee's note dated 10-11-2011, where Dr. Lee stated, "[Ms. Rehnblom] returns for follow up. Actually she walked in wanting a shot of something because she is so worried, nervous and uncomfortable...  I... gave her Chlorpromazine 50 mg intramuscularly." Docket No. 9, Tr. 795).

Additionally, as has been alluded to above and will be discussed more fully in the following section, Ms. Rehnblom's testimony is supported by the medical evidence in this case. Accordingly, substantial evidence does not support the ALJ's decision to give little weight to Ms. Rehnblom's subjective

allegations/testimony regarding her disability. In fact, Ms. Rehnblom's statements regarding her disability are substantially supported by the record in this case. The ALJ's determination was not supported by substantial evidence and was an error. Because Ms. Rehnblom testified credibly about her mental and emotional issues, and that testimony was supported by the medical evidence, the ALJ should have included those limitations in his RFC and the hypothetical questions posed to the vocational expert.

## C. Medical Evidence

Also included in the Plaintiff's challenge to the ALJ's RFC determination is an allegation that the ALJ improperly weighed the medical evidence. Specifically, the Plaintiff argues that, as an examining source, Dr. Lee's opinion was entitled to more weight than the ALJ gave it. Docket No. 13, p. 8-9. In his opinion, the ALJ stated that "Dr. Lee's opinions are boldly inconsistent with the other opinions in the file and the evidence as a whole." Docket No. 9, Tr. 22. The Defendant argues that the ALJ's evaluation was corrected and supported by the evidence. Docket No. 14, 18-20.

As has been repeatedly stated:

> [t]he opinion of a treating physician:
> should not ordinarily be disregarded and
> is entitled to substantial weight. A
> treating physician's opinion regarding an
> applicant's impairment will be granted
> controlling weight, provided the opinion
> is well-supported by medically acceptable
> clinical and laboratory diagnostic
> techniques and is not inconsistent with
> the other substantial evidence in the
> record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

Additionally, the opinions of an examining physician should

be given greater weight that the opinions of a source who had

not examined the claimant. See Shontos v. Barnhart, 328 F.3d

418, 425 (8th Cir. 2003), citing 20 C.F.R. § 404.1527(d)(1)

(now 20 C.F.R. §404.1527(c)).

In this case, the ALJ rejected the opinion of Dr. Lee,

the treating doctor. Instead, the ALJ relied on consultive

opinions from Dr. Morton, Dr. Wright and Dr. Jan Hunter.

Docket No. 9, Tr. 22. Those doctors each reviewed the files

and determined Ms. Rehnblom does not have a severe

impairment.[2]

---

[2] Of course, the ALJ also discounted the opinion of
examining consultant Dr. Brunkhorst, even though examining
consultants are due greater consideration than mere record

The law is clear that the treating source should be given greater weight than the opinion of the consultants. Dr. Lee has repeatedly seen Ms. Rehnblom for mental and emotional issues. His opinion is consistent with comments made by other treating providers throughout the years, including Dr. Lee Berryhill, Dr. Uzoma Okoli, physician's assistant Angela Grundmeyer, physicians assistant Mike Corsberg and others. Docket No. 9, Tr. 292, 299, 338, and 287. The Court is persuaded that Dr. Lee's opinion that Ms. Rehnblom is unable to function on a day to day basis is consistent with the record. See Docket No. 9, Tr. 774-775. The ALJ's decision to grant Dr. Lee's opinion little (or no) weight, while giving substantial weight to the non-examining sources, is not supported by substantial evidence and was an error.

---

reviewers, because Dr. Brunkhorst's conclusion supported Ms. Rehnblom's severe depression. Similarly, the ALJ made only a throw away reference to the opinion of Dr. P.E. Lonning, who examined Ms. Rehnblom's mental functioning and concluded, "Ms. Rehnblom... is functioning at the borderline level... It is felt that she will have problems remembering and understanding instructions... [t]his is also true of her ability to carry out instructions, maintain attention, concentration and pace..." Docket No. 9, Tr. 285.

## D.  Hypothetical

The ALJ questioned the vocational expert.  In his first hypothetical, the ALJ asked:  "I limit her as follows:  no physical limitations to speak of.  However, simple, routine, repetitive work, no contact with the public, regular pace. Are there jobs out there for such a person?"  Docket No. 9, Tr. 44.  The vocational expert answered that there were jobs she could perform, including as a laundry folder and a housekeeper.  Id.  However, when the ALJ added an additional criteria, that the claimant would have slow pace for a third of the day, the vocational expert testified that she would be unable to find a job.  Docket No. 9, Tr. 45.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments."  Buckner v. Astrue, 646 F.3d 549, 560–61 (8th Cir. 2011).  "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments."  Id. (quoting Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010)).

Based on the foregoing analysis regarding credibility and medical evidence, the Court is persuaded that the ALJ failed to properly articulate Ms. Rehnblom's limitations in the first hypothetical question to the vocational expert. The second hypothetical questions more accurately stated all of Ms. Rehnblom's limitations. In response to that question, the vocational expert stated that no jobs exist that Ms. Rehnblom could perform.

## VI. CONCLUSION

It is clear the ALJ erred in the credibility, medical evidence and RFC sections discussed above. Additionally, the Appeals Council failed to consider the new evidence submitted by Ms. Rehnblom. The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th

Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence is considered along with the Plaintiff's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 27th day of March, 2014.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa